**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION** | : | **MDL DOCKET NO. 1935** **(Civil Action No. 1:08-MDL-1935)** |
| | : | **(Judge Conner)** |
| **THIS DOCUMENT APPLIES TO:** | : | |
| **ALL CASES** | : | |

**MEMORANDUM**

Presently before the court is defendants' motion (Doc. 588) to certify an interlocutory appeal from the memorandum and order of court (Doc. 582) dated March 4, 2009 (hereinafter "the March 4 Memorandum"). For the reasons that follow, the motion will be granted.

## I. Procedural History and Background[1]

Plaintiffs in the above-captioned matters allege that defendants conspired to fix prices in the United States market for chocolate candy in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Defendants allegedly implemented three coordinated prices increases from 2002 to 2007, raising prices in nearly identical proportion to one another on each occasion. During the same period, formidable barriers to entry protected the chocolate candy market, defendants' raw material costs remained stable, and consumer demand waned, thereby providing defendants with the market power and motive to act in an anticompetitive manner.

[1]The March 4 Memorandum provides a comprehensive description of plaintiffs' averments. The court recounts only those allegations necessary to facilitate disposition of the instant motion.

Defendants also allegedly engaged in price fixing in Canada. In mid-2007, Canadian antitrust authorities released documents depicting an orchestrated conspiracy by defendants' Canadian subsidiaries to exchange pricing information, control retail promotion costs, and implement price increases in the Canadian chocolate market. Defendants have allegedly integrated their American and Canadian operations through, *inter alia*, coordinated manufacturing and distribution systems, cross-border licensing agreements, and fusion of corporate oversight. Plaintiffs contend that, in light of this market integration, evidence of defendants' Canadian conduct lends plausibility to the alleged pricing conspiracy in the United States.

All defendants filed motions to dismiss the amended complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On March 4, 2009, the court denied the motions of certain defendants[2] under the Supreme Court's recent decision in Bell Atlantic Co. v. Twombly, 550 U.S. 544 (2007). (See Doc. 582, Part III.B.1.) Defendants presently move to certify an interlocutory appeal of the court's application of Twombly. The parties have fully briefed the motion, which is now ripe for disposition.

[2]These defendants include Cadbury Adams Canada, The Hershey Company, Hershey Canada, Mars, Mars Snackfood U.S., and Nestlé U.S.A. The remaining defendants filed simultaneous motions contesting personal jurisdiction, and the court deferred their Rule 12(b)(6) motions pending a period of jurisdictional discovery and resolution of threshold jurisdictional issues. (See Doc. 582 at 54.)

## II. Discussion

Denials of motions to dismiss are not final orders, and a losing party may not ordinarily pursue an immediate appeal from them. Nevertheless, a court may certify a non-final order for interlocutory appeal under 28 U.S.C. § 1292(b) if (1) the order "involves a controlling question of law," (2) "a substantial ground for difference of opinion" exists with regard to the issue involved, and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); Simon v. United States, 341 F.3d 193, 199 (3d Cir. 2003). The certification decision rests with the discretion of the district court, and the court may decline to certify an order even if the parties have satisfied all elements enumerated in the statute. Knipe v. SmithKline Beecham, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008); L.R. v. Manheim Twp. Sch. Dist, 540 F. Supp. 2d 603, 608 (E.D. Pa. 2008).

### A. Criteria for Certification under 28 U.S.C. § 1292(b)

Defendants in the present matter request certification of the following two issues for interlocutory appeal:

> (1) [W]hether Twombly, as a matter of antitrust law, allows a court on a motion to dismiss to draw an inference of conspiracy in a parallel pricing case based on market characteristics, absent any direct allegations of actual agreement; and
>
> (2) [W]hether allegations stemming from a foreign antitrust investigation can lend "plausibility" under Twombly to state a claim of U.S. conspiracy.

(Doc. 589 at 4.) The court will evaluate these questions to determine whether they satisfy the interlocutory appeal standard under § 1292(b).

**1. Controlling Question of Law**

An order involves a controlling question of law if either (1) an incorrect disposition would constitute reversible error if presented on final appeal or (2) the question is "serious to the conduct of the litigation either practically or legally." Katz v. Carte Blanche Corp, 496 F.2d 747, 755 (3d Cir. 1974); see also Knipe, 583 F. Supp. 2d at 599. In the matter *sub judice*, the parties dispute whether defendants' proposed questions accurately describe the foundation of the March 4 Memorandum. Defendants posit that the memorandum relied primarily upon domestic market characteristics and foreign anticompetitive conduct when denying the motions to dismiss. (Doc. 589 at 4.) Plaintiffs contend that defendants unduly confine the court's holding and fail to acknowledge the significance of additional factual context alleged in the amended complaints, such as market integration between the United States and Canada and other "indicia of collusion." (Doc. 596 at 7.)

The court concludes that defendants' proposed questions paint the amended complaints and the March 4 Memorandum with too fine a stroke. The pertinent issue is not whether *either* characteristics of a mature market *or* anticompetitive foreign conduct satisfy Twombly when placed alongside allegations of parallel conduct. The more befitting inquiry is whether the *totality of the amended complaints* raise a plausible inference of price fixing. Any question certified for

appeal must account not merely for market characteristics and foreign conduct, but also for the affinity between the U.S. and Canadian chocolate markets, the economic reasonableness of the alleged conspiracy, and defendants' opportunity for consultation. Defendants' success in effectuating three separate, uniform price increases and the allegedly overlapping management of their Canadian and American subsidiaries also influence the Twombly analysis. Therefore, the following single question more accurately encapsulates the gravamen of the court's ruling on the Rule 12(b)(6) motions:

> Does Twombly, as a matter of law, authorize a court in a § 1 case to draw an inference of conspiracy from the collective effect of repeated parallel price increases, averments of anticompetitive activity in closely related foreign markets, transnational management of corporate subsidiaries, opportunity for collusion, and descriptions of anti-competitive conduct that are economically sensible in light of mature market characteristics?[3]

The March 4 Memorandum provided an affirmative response to this question. Disposition of the motions would unquestionably change were this question answered in the negative. Accordingly, this question presents a controlling issue of law appropriate for appellate certification.

**2. Substantial Ground for Difference of Opinion**

A substantial ground for difference of opinion exists when controlling authority fails to resolve a pivotal matter. Knipe, 583 F. Supp. 2d at 599; EBC, Inc. v. Clark Bldg. Sys., No. Civ.A. 05-01549, 2008 WL 728541, at *2 (W.D. Pa. Mar. 17,

---

[3]This question effectively merges the two issues identified by defendants into a single inquiry and reflects the court's duty to evaluate the amended complaints *in toto*.

2008). A genuine doubt must exist about the legal standard governing a particular case. Knipe, 583 F. Supp. 2d at 600. The existence of conflicting judicial opinions provides support for certification of an appeal, as does a lack of binding precedent. See id.; Morgan v. Ford Motor Co., No. Civ.A. 06-1080, 2007 WL 269806, at *3 (D.N.J. Jan. 25, 2007); Chase Manhattan Bank v. Iridium Africa Corp., 324 F. Supp. 2d 540, 545 (D. Del. 2004). However, the court should not certify questions of relatively clear law merely because the losing party disagrees with the court's analysis. Elec. Mobility Corp. v. Bourns Sensors/Controls, 87 F. Supp. 2d 394, 398 (D.N.J. 2000).

In the present matter, defendants observe that Twombly communicates "multiple linguistic signals" about the standard of review that a court must apply on a Rule 12(b)(6) motion. (Doc. 589 at 9 (quoting City of Moundridge v. Exxon Mobil Corp., 250 F.R.D. 1, 6 n.5 (D.D.C. 2008)). On one hand, Twombly superceded the pleading standard of Conley v. Gibson, under which "a complaint [was] not [to be] . . . dismissed . . . unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 46-47 (1957). Twombly concluded that this standard was "an incomplete, negative gloss" on pleading practice, 550 U.S. at 563, and instead required complaints to set forth plausible averments that possess "enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting FED. R. CIV. P. 8(a)(2) (alteration in original)). At the same time, however, Twombly expressly rejected a requirement of "heightened fact pleading of specifics." Id. at 570. Since Twombly's issuance, the Supreme Court has reaffirmed that a complaint must simply "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, ---, 127 S. Ct. 2197, 2200 (2007) (quoting Twombly, 550 U.S. at 555).

Several courts have observed that Twombly's varied analytical cues expose it to multiple interpretations. See, e.g., Iqbal v. Hasty, 490 F.3d 143, 155-57 (2d Cir. 2007); Weisbarth v. Geauga Park Dist., 499 F.3d 538, 541-42 (6th Cir. 2007); Moundridge, 250 F.R.D. at 6 n.5; Arista Records LLC v. Doe, 584 F. Supp. 2d 240, 244 & n.6, 245 & n.7, 246-47 (D. Me. 2008); Accenture Global Servs. GMBH v. Guidewire Software, Inc., 581 F. Supp. 2d 654, 661 & n.5 (D. Del. 2008). Prior to Twombly, courts and commentators had maligned the Conley standard for many years, and complaints infrequently received the absolute deference required by a literal reading of the decision. See, e.g., McGregor v. Indus. Excess Landfill, Inc., 856 F.2d 39, 43 (6th Cir. 1988); Sutliff, Inc. v. Donovan Cos., 727 F.2d 648, 654 (7th Cir. 1984); O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976); Christopher M. Fairman, The Myth of Notice Pleading, 45 ARIZ. L. REV. 987, 1014-21 (2003); Yoichiro Hamabe, Functions of Rule 12(b)(6) in the Federal Rules of Civil Procedure: A Categorization Approach, 15 CAMPBELL L. REV. 119, 130-34 (1993); Richard L. Marcus, The Revival of Fact Pleading under the Federal Rules of Civil Procedure, 86 COLUM. L. REV. 433, 463-65 (1986). Hence, a narrow reading of Twombly construes it as a formalistic change designed to give voice to a pleading standard that was already commonplace in many courts. Under a robust interpretation, however, Twombly requires a court to scrutinize the plausibility of a

complaint's allegations and dismiss claims that lack sufficient factual underpinning for the relief requested.

The United States Court of Appeals for the Third Circuit's decision in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), recognized that Twombly's exact location on the continuum between these interpretations is unclear. Phillips concluded that Twombly did not institute a new pleading regime but required the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the claims alleged in the complaints. Id. at 234 (quoting Twombly, 550 U.S. at 556). The plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. However, the precise quorum of facts necessary to reach this point remains uncertain, causing the Third Circuit to prognosticate that "[t]he issues raised by Twombly are not easily resolved, and likely will be a source of controversy for years to come." Id. at 234.

These issues hold particular significance in the antitrust arena, where plaintiffs often lack direct evidence of a conspiratorial agreement and must rely upon circumstantial allegations to surmount a Rule 12(b)(6) challenge. The March 4 Memorandum concluded that a § 1 plaintiff may satisfy Twombly by describing parallel price increases, clear opportunity for collusion, anticompetitive activity in foreign markets intertwined with those in the U.S., transnational management of corporate subsidiaries, and allegations of anti-competitive conduct that are economically sensible in light of mature market characteristics. (Doc. 582 at 59-62.)

The court remains convinced of the propriety of this conclusion. Nevertheless, the court recognizes that the Twombly standard is in its infancy and that capable jurists may disagree about its effect on plaintiffs' pleading obligations. Such disagreement could lead to differing outcomes between this matter and analogous cases addressing motions similar to those raised by defendants. Hence, the question of controlling law formulated by the court satisfies the second criterion of § 1292(b).

### 3. Materially Advances the Termination of the Litigation

Finally, any question certified for appeal must "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The court must evaluate whether an appeal could eliminate the need for a trial, simplify a case by foreclosing complex issues, or enable the parties to complete discovery more quickly or at less expense. Knipe, 583 F. Supp. 2d at 599; Patrick v. Dell Fin. Servs., 366 B.R. 378, 387 (M.D. Pa. 2007). Cases in which discovery has closed are generally inappropriate for interlocutory appeal because they are rapidly approaching conclusion under their own momentum. Patrick, 366 B.R. at 387; FDIC v. Parkway Executive Office Ctr., No. Civ.A. 96-121, 1997 WL 611674, at *3 (E.D. Pa. Sept. 24, 1997).

Certifying an interlocutory appeal could significantly advance the termination of the instant matter. Discovery on class and merits issues has not yet

commenced[4] and will likely implicate reams of documents, weeks of depositions, and a battery of interrogatories and requests for admissions.[5] Expenses in the form of attorney time, document storage, and parties' involvement will likely mount as discovery progresses. The parties' proposed class certification schedules provide stark portraits of the time and expense associated with this process: Defendants allot 370 days for discovery. Plaintiffs request at least 500.[6] Appellate review of the motions to dismiss could eliminate the need for this period of prolonged and costly discovery. Alternatively, affirmance of the March 4 Memorandum would validate these significant expenditures. The court therefore concludes that the March 4 Memorandum satisfies the criteria for certification of an interlocutory appeal under § 1292(b).

**B. Discretionary Certification**

The court possesses discretion to deny certification of an appeal even if the parties satisfy the statutory criteria of § 1292(b). Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976). "[A] district court should exercise this discretion and certify

---

[4]The parties are currently engaged in a period of limited jurisdictional discovery to facilitate disposition of certain defendants' challenges to personal jurisdiction. See supra note 2; (Doc. 582 at 50-53).

[5]The parties dispute the need to separate discovery into class certification and merits phases. The identification of these two forms of discovery does not constitute the court's endorsement of a bifurcated discovery schedule. The court has separately identified these types of discovery to illustrate the incipient nature of this matter.

[6]The parties submitted proposed schedules for class certification discovery via facsimile on January 14, 2009.

issues for interlocutory appeal only sparingly and in exceptional circumstances." Sabree v. Williams, No. Civ.A. 06-2164, 2008 WL 4534076, at *1 (D.N.J. Oct. 2, 2008); see also Knipe, 583 F. Supp. 2d at 599.

In the instant matter, the Twombly issues associated with the March 4 Memorandum will effectively pass beyond the reach of appellate review unless the court certifies an interlocutory appeal. These issues directly confront Twombly's effect on the law of pleading and its application to antitrust complaints subject to a Rule 12(b)(6) motion. Although the Third Circuit has applied Twombly outside of the antitrust context, see Phillips, 515 F.3d at 234, it has yet to consider Twombly's application to a § 1 claim based upon allegations of parallel conduct. Therefore, the court's certification will materially advance the instant matter and bring clarity to a still-developing area of law.

## III. Conclusion

The court will certify for appeal Part III.B.1 of the March 4 Memorandum along with the question formulated in Part II.A.1 above.[7]

An appropriate order is attached.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: April 8, 2009

[7]Defendant Cadbury Adams Canada has filed a motion for reconsideration (Doc. 590) of the March 4 Memorandum on Twombly grounds. The motion will be denied as moot pending the outcome of proceedings under § 1292(b). Cadbury Adams Canada will be permitted to reassert the motion in the event that the Third Circuit declines an appeal or that an appellate decision fails to resolve the issues raised therein.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION** | : | **MDL DOCKET NO. 1935 (Civil Action No. 1:08-MDL-1935)** |
| | : | **(Judge Conner)** |
| **THIS DOCUMENT APPLIES TO:** | : | |
| **ALL CASES** | : | |

**ORDER**

AND NOW, this 8th day of April, 2009, upon consideration of defendants' motion to certify an interlocutory appeal (Doc. 588), and of defendant Cadbury Adams Canada's motion for reconsideration (Doc. 590) of the memorandum and order of court (Doc. 582) dated March 4, 2009, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to certify an interlocutory appeal (Doc. 588) is GRANTED. Part III.B.1 of the memorandum and order of court (Doc. 582) dated March 4, 2009 is CERTIFIED for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The following question is further CERTIFIED pursuant to 28 U.S.C. § 1292(b):

   Does Twombly, as a matter of law, authorize a court in a § 1 case to draw an inference of conspiracy from the collective effect of repeated parallel price increases, averments of anticompetitive activity in closely related foreign markets, transnational management of corporate subsidiaries, opportunity for collusion, and descriptions of anti-competitive conduct that are economically sensible in light of mature market characteristics?

2. The appellate certification granted in the preceding paragraph shall have no effect on the provisions of Case Management Order No. 9 (Doc. 583). Jurisdictional discovery shall continue during the pendency of any appeal accepted by the United States Court of Appeals for the Third Circuit.

3. The motion for reconsideration (Doc. 591) is DENIED as moot in light of the certification of an interlocutory appeal. Cadbury Adams Canada may reassert the motion in the event that the Third Circuit declines to accept an appeal or that an appellate decision fails to resolve the issues raised therein. Any renewed motion for reconsideration shall be filed within five days of the conclusion of appellate proceedings under 28 U.S.C. § 1292(b).

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge