# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION : : : : | MDL DOCKET NO. 1935 (Civil Action No. 1:08-MDL-1935) (Judge Conner) |
| THIS DOCUMENT APPLIES TO: : : ALL CASES : | |

## MEMORANDUM

Presently before the court is plaintiffs' motion to strike (Doc. 640) the errata and supplemental declaration prepared by Hans Peter Frick ("Frick") following his deposition as the designee of defendant Nestlé S.A., a corporation formed under the laws of Switzerland. Plaintiffs contend that the errata and declaration improperly attempt to alter the content of Frick's testimony. Nestlé S.A. responds that Frick prepared the materials to clarify his deposition responses and to offer additional information about which he was unaware at the time of his testimony. For the reasons that follow, plaintiffs' motion to strike will be denied, and both the original testimony and supplemental materials will remain components of the record.

### A. Factual and Procedural Background

Plaintiffs deposed Frick pursuant to Federal Rule of Civil Procedure 30(b)(6) about numerous topics including the relationship between Nestlé S.A. and an entity known as Nestec S.A. ("Nestec"). Nestec, a wholly owned subsidiary of Nestlé S.A., provides technical and strategic assistance to Nestlé S.A.'s operating subsidiaries, including defendants Nestlé U.S.A. and Nestlé Canada. In this capacity, Nestec

supports and advises organizations within the Nestlé corporate family[1] about matters such as installation of new manufacturing lines, (Doc. 642, Ex. 1 at 62), future brand development, (id. at 65-66), and implementation of marketing and distribution strategies, (id. at 75-76).

Frick testified that he serves as chief executive officer ("CEO") of Nestec. (Id. at 64.) However, plaintiffs' Rule 30(b)(6) notice (Doc. 642, Ex. 3) did not identify Nestec as a subject of deposition questioning,[2] and Frick did not investigate Nestec's corporate structure or its relationship to other members of the Nestlé corporate family in advance of his deposition, (see, e.g., Doc. 627, Ex. A ¶ 3; Doc. 651, Ex. A). He was unable to respond to questions about Nestec on at least fifteen

---

[1]As used herein, the phrase "Nestlé corporate family" refers to Nestlé S.A. and all of its affiliated (operating and holding) corporations.

[2]Plaintiffs contend that their queries about Nestec "fall[] squarely within the broad jurisdictional topics referenced in Plaintiff's Rule 30(b)(6) notice." (Doc. 641 at 13.) The content of plaintiffs' notice belies this assertion. The notice focuses upon "[t]he relationship between Nestlé S.A. and Nestlé USA," and enumerates fourteen areas of inquiry about the interaction between the two entities. (Doc. 642, Ex. 3 ¶¶ 3-3.n). It also solicits information about "[t]he extent to which Nestlé S.A. has contact with or does business in the United States," (id. ¶ 4), and about various documents produced by Nestlé S.A., (id. ¶¶ 1-2). Nestec S.A. does not appear in the notice, and Frick had no reason to expect that he would be interrogated at length about its corporate functions.
Nothing in the record suggests that this omission resulted from bad faith or even neglect by plaintiffs' counsel. In fact, Frick was the first individual to mention Nestec, and plaintiffs' counsel logically followed his reference with numerous questions about its role within the Nestlé corporate family. It appears that Frick's serendipitous remark about Nestec illuminated this entity's significance where previously plaintiffs had perceived only shadows. Hence, the court cannot fault plaintiffs' counsel for omitting Nestec from the Rule 30(b)(6) notice any more than it can reproach Frick for failing to prepare responses regarding matters not contained in the notice.

2

occasions, (Doc. 642, Ex. 1 at 122, 173, 178, 213, 225-26, 287-88, 292, 296), and he lacked knowledge about whether the company maintains bank accounts in the United States, how many individuals it employs in the United States, whether it owns real property, and how many patents it holds. (Id. at 178, 287.)

Following the deposition, Frick executed the errata (Doc. 642, Ex. 2) and supplemental declaration (Doc. 627, Ex. A) that plaintiffs presently seek to strike. The errata sheet contains twenty-nine corrections to Frick's testimony. Four corrections state that Frick holds the title of managing director of Nestec rather than CEO. (Doc. 642, Ex. 2.) According to Frick, confusion about his title arose because the governance structure of Swiss corporations does not correlate directly to the titles and positions commonly used in the United States. (Id. at 1; Doc. 642, Ex. 1 at 102-03.) Approximately ten errata distinguish functions performed by Nestec S.A. from those carried out by its subsidiaries; five provide information unknown to Frick at the time of the deposition; and four correct stenographic mistakes. (Doc. 642, Ex. 2 at 1-5) The supplemental declaration substantially reiterates the material contained in the errata. (See Doc. 627, Ex. A.)

Plaintiffs move to strike the errata and declaration as attempts to alter the content of Frick's testimony inappropriately. Defendants respond that the supplemental materials merely clarify Frick's description of matters that did not fall within the ambit of the Rule 30(b)(6) notice. The parties have fully briefed these issues, which are now ripe for disposition.

3

**B.      Discussion**

Rule 30(e) of the Federal Rules of Civil Procedure allows a deponent who reserves the right to review his or her testimony to amend it "in form or substance" within thirty days following preparation of the deposition transcript. See FED. R. CIV. P. 30(e)(1). The deponent must explain the reasons for the changes, id. R. 30(e)(1)(B), and the reporter must append them to the deposition transcript, id. R. 30(e)(2).

Courts have diverged over whether the rule permits a deponent to change the substantive content of his or her testimony[3] or whether it contemplates only ministerial changes to the transcript.[4] See, e.g., Agrizap, Inc. v. Woodstream Corp., 232 F.R.D. 491, 493 n.2 (E.D. Pa. 2006) (collecting cases that both permit and prohibit witnesses from changing material deposition testimony under Rule 30(e)).

---

[3]See, e.g., Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997) (holding that Rule 30(e) places no limitations on the ability of a deponent to amend deposition responses); Reilly v. TXU Corp., 230 F.R.D. 486, 490 (N.D. Tex. 2005) (same); Glenwood Farms, Inc. v. Ivey, 229 F.R.D. 34, 35 (D. Me. 2005) (same); Foutz v. Town of Vinton, 211 F.R.D. 293, 295 (W.D. Va. 2002); DeLoach v. Philip Morris Cos., 206 F.R.D. 568, 572-73 (M.D.N.C. 2002); Tingley Sys., Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 120 (D. Mass. 2001).

[4]See, e.g., Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1281-82 (10th Cir. 2003) (treating deposition errata under Rule 30(e) in a manner akin to an affidavit offered solely to create a sham issue of fact); Thorn v. Sundstrant Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000) (holding that Rule 30(e) does not permit changes that directly contradict the substance of a deposition unless the alterations are attributable to a transcription error); Wigg v. Sioux Falls Sch. Dist. 49-5, 274 F. Supp. 2d 1084, 1090-91 (D.S.D. 2003), rev'd in part on other grounds by 382 F.3d 807 (8th Cir. 2004).

4

Despite this split of authority, district courts within the Third Circuit[5]—like the majority of tribunals to have addressed Rule 30(e)—generally permit deponents to amend the content of their testimony. See Towers v. Heidelberger Druckmaschinen Aktiengesellschaft, No. 3:CV-06-700, 2007 WL 1238569, *2 (M.D. Pa. Apr. 26, 2007) (permitting deponent to alter substance of his deposition (citing Podel v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997)); see also Buzoiu v. Risk Mgmt. Alternatives, Inc., No. Civ.A. 03-3579, 2004 WL 1427147, at *1 (E.D. Pa. June 24, 2004); Titanium Metals Corp. v. Elkem Mgmt., Inc., 191 F.R.D. 468, 472 (W.D. Pa. 1998); Turchan v. Bailey Meter Co., 21 F.R.D. 232, 233 (D. Del. 1957); accord 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2118 (2d ed. 1994). While courts typically look askance at attempts to retract damaging admissions unearthed during testimony, they often permit deponents to elucidate testimony or to supply additional information necessary to bring context to deposition responses. Compare, e.g., Donald M. Durkin Contracting, Inc. v. City of Newark, No. CIVA 04-163, 2006 WL 2724882, at *5 (D. Del. Sept. 22, 2006) (suppressing errata sheets that amended key testimony to advance alternative defenses not discussed during the deposition); with Pa. Dep't of Envtl. Prot. v. Allegheny Energy, Inc., No. Civ.A. 05-885, 2008 WL 4960100, at *27-28 (Sept. 2, 2008) (recommendation of magistrate judge) (declining to suppress errata sheets that

---

[5]Neither the parties nor the court have identified any Third Circuit precedent discussing the extent to which a deponent may alter testimony under Rule 30(e).

5

clarified the deponent's deposition testimony), <u>recommendation adopted in part and modified in part on other grounds by</u> 2008 WL 4960090 (W.D. Pa. Nov. 18, 2008).

This court, like our sister tribunals, requires litigants to preserve the original statements and the errata in the record, and any party may use the original testimony to impeach the deponent if he or she later testifies at trial. <u>Towers</u>, 2007 WL 1238569, at *2; <u>Titanium Metals</u>, 191 F.R.D. at 472; <u>Buzoiu</u>, 2004 WL 1427147, at *2. This permissive approach allows a party to produce all pertinent facts in advance of trial while preserving the opposing party's right to test the deponent's credibility at a later point by examining him or her about inconsistencies between the deposition testimony and errata. <u>See</u> <u>Reilly v. TXU Corp.</u>, 230 F.R.D. 486, 490 (N.D. Tex. 2005) (stating that allowing amendment of testimony "furthers the

purpose of the discovery process—to allow the parties to elicit the true facts of a case before trial").[6]

In the matter *sub judice*, Frick's errata and declaration clarify and explain his deposition. Far from contradicting his testimony, the supplemental materials contain information about Nestec that plaintiffs attempted to elicit during the

---

[6]Plaintiffs urge the court to strike the errata and supplemental declaration under the sham affidavit doctrine. This doctrine allows a court to disregard an affidavit prepared solely to remedy damaging effects of the affiant's prior deposition testimony. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). Courts typically apply the doctrine in the summary judgment context when a witness executes an affidavit following deposition testimony in order to create a dispute of fact that would not otherwise exist. Id. This doctrine permits the court to cast aside the affidavit and dispose of the motion based upon the witness's deposition testimony. Id.; In re CitX Corp., 448 F.3d 672, 679 (3d Cir. 2006). Some courts have applied the sham affidavit doctrine in the Rule 30(e) context, see, e.g., Thorn, 207 F.3d at 389, but those that have adopted a permissive approach to deposition errata have declined to do so because the doctrine defeats the truth-seeking purpose of discovery, Pa. Dep't of Envtl. Prot., 2008 WL 4960100, at *27; Reilly, 230 F.R.D. at 490.

In the present matter, Frick's errata and declaration do not constitute sham affidavits because they refine his testimony rather than gainsay it. See infra pages 7-8 & n.7. Insofar as they diverge from his prior statements, the policies of broad disclosure underlying the discovery rules favor denial of plaintiffs' motion to strike. The discovery rules facilitate disclosure of all facts pertinent to a case. Rigid application of the sham affidavit doctrine in the Rule 30(e) context would defeat this purpose by requiring the parties and the court to ignore relevant information solely because Frick was ill-equipped to answer questions about which he lacked notice. Such a result does not comport with the "broad search for facts" that is the signature of the discovery process. See FED. R. CIV. P. 26 advisory committee's note (1946). Accordingly, the court concludes the errata and declaration do not constitute sham affidavits, and the court will consider them when ruling on the pending jurisdictional motions.

7

deposition but that Frick could not provide due to lack of knowledge.[7]  His behindhand materials delineate the authority of Nestec and its subsidiaries, identify the location of Nestec's employees and assets, and explain the duties of various Nestec personnel.  Frick lacked notice that plaintiffs would question him about these issues, and the errata and supplemental declaration constitute a good faith effort to provide plaintiffs' counsel with complete responses to the inquiries posed during the deposition.  Thus, his errata and declaration comport with the purpose and spirit of Rule 30(e).[8]

---

[7]The clearest discrepancy between Frick's deposition testimony and his supplemental materials concerns the office he holds within the Nestec organizational structure.  Whereas he testified that he is Nestec's CEO, the errata state that his correct title is managing director.  (Compare Doc. 642, Ex. 1 at 64, with Doc. 642, Ex. 2 at 1.)  Despite this variation, Frick described his functional role within Nestec, (see, e.g., Doc. 642, Ex. 1 at 64-65), and neither the errata nor the supplemental declaration contradict this testimony.  In light of Frick's pellucid description of his duties and responsibilities, it is unnecessary to wrangle over whether his business card reads "CEO" or "managing director."

[8]Plaintiffs note that Nestlé S.A. did not request the right to review Frick's testimony at the time of the deposition.  (Doc. 653 at 1 n.1.)  While Rule 30(e)(1) contemplates that a deponent will reserve the right to review and change testimony at the time of the deposition, Nestlé S.A.'s failure to comply with these technical requirements does not require the court to strike Frick's supplemental materials. The errata and declaration explicate his deposition testimony rather than contravene it, and consideration of them will result in no prejudice to plaintiffs. Rather, these materials will enable the court to rule upon the pending jurisdictional motions with a clearer depiction of Nestec's role in the Nestlé corporate family, and the court will consider them notwithstanding defendants' technical failure to comply with the letter of Rule 30(e)(1).

## C. Conclusion

Plaintiffs' motion to strike the errata and supplemental declaration will be denied. Frick's original testimony and his revisions will remain components of the record. In the event that this matter proceeds to trial, plaintiffs may utilize his prior testimony for impeachment purposes to the fullest extent permitted by the Federal Rules of Evidence or other controlling law.

An appropriate order is attached.

           S/ Christopher C. Conner
           CHRISTOPHER C. CONNER
           United States District Judge

Dated:      July 9, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION : : : : | MDL DOCKET NO. 1935 (Civil Action No. 1:08-MDL-1935) |
| : | (Judge Conner) |
| THIS DOCUMENT APPLIES TO: : : ALL CASES : | |

## ORDER

AND NOW, this 9th day of July, 2009, upon consideration of the motion to strike (Doc. 640) the deposition errata (Doc. 642, Ex. 2) and supplemental declaration (Doc. 627, Ex. A) of Hans Peter Frick ("Frick"), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to strike (Doc. 640) is DENIED.

2. Frick's original deposition testimony along with the errata and supplemental declaration shall remain components of the record for the duration of this case. Any party may utilize the original testimony and supplemental materials in any manner consistent with applicable law.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge