# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: CHOCOLATE CONFECTIONARY ANTITRUST LITIGATION : : : : | MDL DOCKET NO. 1935 (Civil Action No. 1:08-MDL-1935) (Judge Conner) |
| THIS DOCUMENT APPLIES TO: : : ALL CASES : | |

## **ORDER**

AND NOW, this 11th day of August, 2009, upon consideration of the motion for reconsideration (Doc. 633) of the memorandum and order of court (Doc. 582) dated March 4, 2009 (hereinafter "the March 4 order") filed by defendant Cadbury Adams Canada, Inc. ("Cadbury Canada"), and it appearing that Cadbury Canada seeks reconsideration on the grounds that it sells no chocolate products in the United States, (Doc. 591 at 4), has no connection to the U.S. market for chocolate candy, (id. at 5), did not enter a conspiratorial agreement, (id. at 6; Doc. 634 at 6), received no economic benefit from the alleged price-fixing scheme, (Doc. 645 at 4-5), and that plaintiffs' amended complaints fail to state a claim for relief under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), (Doc. 634 at 7-9), and it further appearing that the purpose of a motion for reconsideration is to present newly discovered evidence or to correct manifest errors of law or fact, see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), that the court possesses inherent power to reconsider its interlocutory orders "when it is consonant with justice to do so," United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973); Alea N. Am. Ins. Co. v. Salem Masonry Co. 301 F. App'x 119, 121 (3d Cir. 2008), and that a party may not invoke a

motion for reconsideration as a means to relitigate matters of disagreement with the court or to raise stale arguments anew, see Abu-Jamal v. Horn, No. Civ. A. 99-5089, 2001 WL 1609761, at *9 (E.D. Pa. Dec. 18, 2001); see also Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995) (rejecting litigant's "classic attempt at a 'second bite at the apple'"), and the court concluding that Cadbury Canada previously asserted each of the arguments upon which it seeks reconsideration, that plaintiffs allege that (1) Cadbury Canada "produces and sells chocolate candy bars," (Doc. 418 ¶ 47; see also Doc. 420 ¶ 79; Doc. 422 ¶ 38; Doc. 448 ¶¶ 27-28, 36-37, 42-44, 51-53), (2) it engaged in anticompetitive activity in Canada, (Doc. 418 ¶¶ 98-105; Doc. 420 ¶¶ 107-110; Doc. 422 ¶¶ 70-89; Doc. 448 ¶¶ 108-34), (3) production and distribution systems in the United States and Canada are interdependent upon one another, (Doc. 418 ¶¶ 87-88; Doc. 420 ¶ 92; Doc. 422 ¶¶ 87, 89; Doc. 448 ¶ 107.f), and (4) Cadbury Canada's alleged price-fixing activities facilitated a conspiratorial agreement by all defendants to raise prices in the United States,[1] (Doc. 418 ¶¶ 72-74; Doc. 420 ¶¶ 94, 104-06, 112; Doc. 422 ¶¶ 45-57; Doc. 448

---

[1]Cadbury Canada may not obtain dismissal of the Sherman Act claim on the ground that it operates exclusively outside of the United States. Plaintiffs allege that Cadbury Canada, Mars Canada, Hershey Canada, and Nestlé Canada (hereinafter "the Canadian defendants") aided the price-fixing conspiracy in part by abstaining from the American chocolate market. During oral argument on the motions to dismiss, plaintiffs' counsel explained:

> What we're saying is that the[] Canadian subsidiaries . . . could themselves have undercut the U.S. conspiracy that we say occurred[. T]hey could have undercut that by shipping products from Canada into the United States with a U.S. label . . . . [I]nstead of putting a Canadian label on it, [the Canadian defendants could have] put a U.S. label on it and s[o]ld it into the United States where prices are artificially high.

2

¶¶ 107.e-f, .i), and the court further concluding that such allegations adequately plead a claim under § 1 of the Sherman Act, that Cadbury Canada has not demonstrated that the March 4 order contains an error of law or fact,[2] and that its

---

(Doc. 571 at 179.) An agreement to refrain from competing in a geographic area may constitute a § 1 claim. See Palmer v. BRG of Ga., Inc., 498 US. 46, 49 (1990); cf. In re New Motor Vehicles Canadian Export Antitrust Litig., 307 F. Supp. 2d 136, 138-41 (D. Me. 2004) (addressing effects of Illinois Brick v. Illinois, 431 U.S. 720 (1977), on a § 1 claim that arose from defendants' alleged agreement to refrain from importing vehicles from Canada in order to maintain artificially inflated prices in the United States).

    Plaintiffs' market-allocation theory adequately states a price-fixing claim against Cadbury Canada. The Cadbury group benefits from trademark licensing agreements with The Hershey Company ("Hershey Global") under which it receives royalties determined by the income generated from Hershey Global's sale of Cadbury-branded products. (Doc. 620, Ex. 22 § 5.2(a)(ii), at 37.) The Cadbury group (including Cadbury Canada) possessed an economic motive to refrain from exploitation of cross-border arbitrage opportunities to maximize Hershey Global's sale of Cadbury-branded products in the United States. Plaintiffs' complaints plausibly allege such activity, (Doc. 418 ¶¶ 59-73; Doc. 420 ¶¶ 93-95, 113; Doc. 422 ¶¶ 45-55, 84-89; Doc 448 ¶¶ 79-89, 107.f-.i), and these allegations gain verisimilitude in light of the pervasive control that defendants Cadbury plc and Cadbury Holdings exercise over their operating subsidiaries. (Doc. 656 at 59-65.) The March 4 memorandum properly concluded that "[d]efendants' alleged conduct in Canada enhances the plausibility of the alleged U.S. price-fixing conspiracy," (Doc. 582 at 60), that "[t]he operational and structural similarities between the American and Canadian markets lend plausibility to plaintiffs' allegations of conspiratorial pricing," (id. at 61), and that "defendants had ample opportunity to consult with one another about U.S. and Canadian price increases," (id.).

    Also unavailing are Cadbury Canada's assertions that it did not enter a conspiratorial agreement, that it has no connection to U.S. markets, and that plaintiffs' amended complaints fail to state a claim. Cadbury Canada advanced—and the court considered—these arguments prior to issuance of the March 4 memorandum.

    [2]The recent case of Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937 (2009) does not compel a contrary result. Iqbal, issued after the court's March 4 memorandum, refined the pleading standard articulated in Twombly, which requires a complaint to contain factual averments that establish "plausible grounds" for relief. Twombly, 550 U.S. at 556. Iqbal establishes a procedure for evaluating complaints under the Twombly standard:

motion for reconsideration merely seeks to relitigate a "point of disagreement between the Court and the litigant," Abu-Jamal, 2001 WL 1609761, at *9; see also Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002), it is hereby ORDERED that the motion for reconsideration (Doc. 633) is DENIED.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

---

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to [an] assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1950.
    In the matter *sub judice*, plaintiffs' amended complaints allege that (1) high entry barriers surround the U.S. market for chocolate candy, (2) waning consumer demand provided an impetus for collusion, (3) the American and Canadian markets for chocolate candy are tightly interwoven and have a common market structure, (4) defendants' input costs—including those of Cadbury Canada—remained stable throughout the class period, (5) defendants—including Cadbury Canada—possessed ample opportunity to conspire, (6) they participated in price-fixing activity in Canada, (7) they successfully implemented three simultaneous price increases in the United States during the same period that they artificially raised prices in Canada, and (8) they refrained from exploiting cross-border arbitrage opportunities to maintain anticompetitive pricing levels in the United States. (Doc. 582 at 59-61; see also supra note 1.) These averments are plausible assertions of fact, not mere legal conclusions, and their aggregated effect raises a plausible right to relief under § 1 of the Sherman Act.