# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: CHOCOLATE** | : | **MDL DOCKET NO. 1935** |
| **CONFECTIONARY ANTITRUST** | : | **(Civil Action No. 1:08-MDL-1935)** |
| **LITIGATION** | : | |
| _____ | : | **(Judge Conner)** |
| | : | |
| **THIS DOCUMENT APPLIES TO:** | : | |
| | : | |
| **INDIRECT END USERS** | : | |

## MEMORANDUM

This multidistrict matter arises from defendants' alleged attempts to fix the price of chocolate confectionary products in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, various state antitrust, consumer protection, and unfair competition statutes, and in contravention of the common law of several states. Plaintiffs consist of both direct and indirect purchasers of the products in question. One subset of plaintiffs is a putative class of indirect end users (hereinafter, the "IEU plaintiffs"): individuals that purchased defendants' confectionary products for their own use and not for resale. These plaintiffs contend that they paid an artificially inflated purchase price for the chocolate products as a result of defendants' collusive behavior. Presently before the court is a motion (Doc. 671) to dismiss certain claims appearing in the IEU plaintiffs' second amended complaint. For the reasons that follow, the motion will be granted in part and denied in part.

## I. **Factual Background**[1]

The factual allegations underlying this matter are well known to the parties and need not be reviewed in great detail herein.[2] Defendants are members of four multinational corporate families that produce chocolate confectionary products for markets around the globe.[3] From December 2002 to April 2007, defendants purportedly conspired to fix prices in the American chocolate candy market,[4] as evidenced by three allegedly synchronized price increases that occurred during the early- and mid-2000s. In August 2008, three putative subclasses of plaintiffs and a number of individual plaintiffs filed consolidated amended complaints against all defendants claiming injury under federal and state antitrust and consumer protection statutes, as well as the common law of numerous state jurisdictions.

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the second amended complaint. See infra Part II. However, the court has disregarded those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

[2] The court set forth the factual allegations in its memorandum and order dated March 4, 2009, familiarity with which is presumed. (See Doc. 582.)

[3] Defendants are (1) The Hershey Company, (2) Hershey Canada, Incorporated, (3) Mars, Incorporated, (4) Mars Snackfood US, LLC, (5) Nestlé USA, Incorporated, (6) Cadbury plc, (7) Cadbury Holdings Ltd., and (8) Cadbury Adams Canada, Incorporated (collectively, "defendants").

[4] As used in this memorandum, "chocolate candy" and "chocolate confectionary products" refer to chocolate bars and other mass-produced chocolate confections manufactured and packaged for sale to retail consumers.

One of the three putative subclasses is composed of indirect end users of chocolate products. Each indirect end user plaintiff allegedly purchased chocolate candy for personal use in his or her home state. (See Doc. 665 ¶ 11.) The second amended complaint identifies individual plaintiffs residing in twenty-five states, to wit: Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. (Id. ¶¶ 12-49.) A twenty-sixth named plaintiff resides in the District of Columbia. (Id. ¶ 19.) Each of these indirect end users claims that the retail price he or she tendered for defendants' chocolate products was inflated as a result of defendants' price-fixing behavior.

In September 2008, defendants moved to dismiss the IEU plaintiffs' consolidated amended complaint. On March 4, 2009, the court granted this motion in part, dismissing, *inter alia*, claims levied pursuant to the statutory and common law of New York; claims raised under the consumer protection statutes of Kansas and Maine; and all claims for unjust enrichment. (See Doc. 582.) The IEU plaintiffs were permitted leave to amend, however, and filed a second amended complaint on August 26, 2009, (Doc. 665). Defendants thereafter moved to dismiss several state-

law consumer protection and unjust enrichment claims.[5]  (Doc. 671.)  This motion

has been fully briefed and is now ripe for disposition.

## II.  **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  Gelman v. State

Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d

170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the

complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case."  Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

---

[5] Defendants also moved to dismiss claims arising under the antitrust laws of
Arizona and Nevada, but withdrew this motion after reaching an agreement with
the IEU plaintiffs.  (See Doc. 703.)  In addition, defendants moved to dismiss state-
law claims and requested relief appearing in the second amended complaint filed
by the Indirect Purchaser for Resale plaintiffs.  (See Doc. 671.)  This motion was
withdrawn after the parties reached an agreement resolving their dispute.  (See
Doc. 703.)

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry. In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. Discussion

The IEU plaintiffs advance claims under the Sherman Act and the antitrust statutes of seventeen states and the District of Columbia. In addition, the second

5

amended complaint contends that defendants violated the consumer protection and

unfair competition statutes of fourteen states and the District of Columbia, and

further alleges that defendants are liable for unjust enrichment in twenty-three

states. Defendants move to dismiss thirteen of the unjust enrichment claims, as

well as the consumer protection claims arising under Hawaii, Massachusetts,

Nevada, and New Hampshire law. The court will address each of defendants'

arguments *seriatim*.

### A.    Consumer Protection & Unfair Competition Claims[6]

#### 1.    Hawaii

Defendants move to dismiss the IEU plaintiffs' claim under Hawaii's

consumer protection statute, which prohibits "unfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce."

Haw. Rev. Stat. § 480-2. A separate provision of the act, section 480-13.3 sets forth

specific procedures under which a putative class of indirect purchasers may

proceed in order to vindicate alleged violations of the statute. Specifically, the class

---

[6] IEU plaintiffs argue that defendants have waived the right to seek dismissal of the Massachusetts, Nevada, and New Hampshire consumer protection claims because they did not move to dismiss these state-law actions in their original motion to dismiss the consolidated amended complaint. However, the IEU plaintiffs' second amended complaint supersedes the consolidated amended complaint, Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002); see also 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476, at 556 (2d ed. 1990), which allows defendants to raise substantive arguments in a new responsive pleading irrespective of whether those contentions were raised in response to the consolidated amended complaint, see In re Parmalat Sec. Litig., 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006).

plaintiffs must serve a copy of their complaint and supporting materials upon the Hawaii attorney general within seven days of filing a lawsuit. See Haw. Rev. Stat. § 480-13.3(a)(1). The attorney general retains sole discretion to determine whether the state will pursue the action or file an action involving similar claims. See § 480-13.3(a)(4). In the event that the attorney general declines to pursue legal recourse, the class plaintiffs shall have the right to conduct the action. See § 480-13.3(a)(5)(C). The above-described procedure is mandatory for all unfair competition claims arising under the Hawaii Antitrust Act except those "based on unfair or deceptive practices declared unlawful by section 480-2." § 480-13.3(b).

Defendants argue that the IEU plaintiffs' § 480-2 claim is not ripe because they did not follow the service procedures mandated by § 480-13.3. In response, the IEU plaintiffs contend that their consumer protection claim falls within the exception set forth in § 480-13.3(b), which eliminates the attorney general notification requirement for actions based on unfair or deceptive practices in the conduct of trade or commerce. The IEU plaintiffs point to Count Three of the second amended complaint, which alleges that "[d]efendants have engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices" in violation of several state laws, including § 480-2. (Doc. 665 ¶¶ 159, 164.) By its plain language, however, this count alleges that defendants engaged in *both* unfair competition and unfair or deceptive acts or practices. Under § 480-13.3(a), any action based upon unfair competition must adhere to the attorney general notification procedures enumerated by statute; the IEU plaintiffs' failure to comply

7

with the statutory provision therefore warrants dismissal.  See In re Flash Memory
Antitrust Litig., 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009) (dismissing indirect
purchasers' claim under the Hawaii Antitrust Act when plaintiffs did not follow
service requirements of § 480-13.3 and did not expressly limit their claim to unfair
and deceptive acts).

The IEU plaintiffs acknowledge that the second amended complaint "does
not explicitly limit [their] claim to unfair and deceptive acts and practices," but they
explicitly disavow any intent to base the § 480-2 action on unfair competition.  (See
Doc. 701 at 10-11.)  Notwithstanding this disclaimer, unfair competition allegations
underpin the claim as it is now pled.  Accordingly, the § 480-2 claim must be
dismissed.  See In re Flash Memory, 643 F. Supp. 2d at 1158.  In light of the IEU
plaintiffs' representations, however, the court will permit narrow amendment of the
§ 480-2 claim.  The amended pleading must expressly limit the cause of action to the
unfair and deceptive acts provision of § 480-2 or the claim shall be stricken as
jurisdictionally barred.

### 2.  **Massachusetts**

Defendants next seek dismissal of the claim raised pursuant to chapter 93A
of the Massachusetts General Laws, a provision which renders it unlawful to engage
in unfair methods of competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce, see Mass. Gen. Laws ch. 93A, § 2.  Prior to
commencement of suit under this chapter, a plaintiff must tender a letter of
demand to any prospective respondent, identifying the claimant, describing the

complained-of acts, and setting forth the suffered injury.  See id. § 9(3).

Massachusetts courts have characterized the statutory notification requirement as

"a prerequisite to suit," Spring v. Geriatric Auth. of Holyoke, 474 N.E.2d 727, 735

(Mass. 1985), and explained that it is a "special element" of the cause of action

which must be alleged in the plaintiff's complaint, Entrialgo v. Twin City Dodge,

333 N.E.2d 202, 204 (Mass. 1975); see also Rodi v. S. N. Eng. Sch. of Law, 389 F.3d 5,

19 (1st Cir. 2004).

The demand requirement applies only to prospective respondents that

maintain a place of business or keep assets within the state.  See § 9(3).  Thus, when

a respondent is without assets or an in-state place of business, a plaintiff need not

serve a demand or plead this special element to proceed under chapter 93A.  See

id.; see also Richards v. Arteva Specialties S.A.R.L., 850 N.E.2d 1068, 1078 n.13

(Mass. App. Ct. 2006) (explaining that the demand letter requirements of § 9 do not

apply to respondents that lack an in-state place of business or assets within the

Commonwealth).  The IEU plaintiffs admit that they did not serve letters of demand

upon any defendants, but claim that they are exempted from this requirement

because no defendants maintain places of business in Massachusetts or keep assets

within the state.

Defendants do not squarely address the applicability of the § 9 exemption,

but instead argue that they bear no affirmative duty to identify their assets or

places of business.  In addition, defendants assert—in a footnote and without

further detail—that both the Hershey Company and Nestlé USA "maintain assets

9

or a place of business in Massachusetts." (Doc. 712 at 13 n.10.) After examining the

pleadings and motion to dismiss papers, however, the court is unable to ascertain

whether the § 9 notification exemption applies to any defendants. In other words, it

is unclear whether any defendant maintains a place of business or keeps assets

within the state of Massachusetts. Resolution of this inquiry must simply await

further development of the factual record and, consequently, defendants' motion to

dismiss this claim will be denied. The IEU plaintiffs may also elect to circumvent

future § 9 disputes by amending their complaint and complying with the

notification requirements. See Tarpey v. Crescent Ridge Dairy, Inc., 713 N.E.2d

975, 983 (Mass. App. Ct. 1999) (affirming trial court ruling allowing plaintiff to

amend complaint despite failure to deliver demand letter prior to commencement

of action); Lilly v. Turboprop East, Inc., No. Civ. A. 00-CV-05489, 2004 WL 540445, at

*3 (E.D. Pa. Mar. 17, 2004) (excusing plaintiff's failure to serve demand letter thirty

days prior to filing of third amended complaint).

> **3.** **Nevada**

The IEU plaintiffs raise a consumer protection claim under Nevada's

Deceptive Trade Practices Act (hereinafter, "NDTPA"). See Nev. Rev. Stat.

§§ 598.0903-598.0999. A private civil action may be commenced under the NDTPA

only by "an elderly person or a person with a disability." Id. § 598.0977; see also In

re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 163-64 (E.D. Pa. 2009). The

Nevada class plaintiffs are not alleged to be either elderly or disabled, and the IEU

plaintiffs offer no explanation for their failure to satisfy this standing requirement.[7]

Accordingly, the court will dismiss the consumer protection claims arising under

the NDTPA.  See Wellbutrin, 260 F.R.D. at 163-64 (dismissing NDTPA claims for

lack of standing when named plaintiffs were neither "elderly" or "disabled").  The

IEU plaintiffs will be permitted to amend this claim, however, to satisfy the

standing requirements set forth in the statute.  See Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (finding that amendment should be permitted

unless such action would be inequitable or futile).

---

[7] The IEU plaintiffs invite the court to defer ruling on this issue until class
certification proceedings commence, but the court declines this invitation.  In its
March 4, 2009 memorandum, the court deferred ruling on whether the IEU
plaintiffs and the Indirect Purchaser for Resale plaintiffs could pursue claims under
the statutes of states in which no putative class representative either resides or does
business.  (See Doc. 582 at 64-66.)  As explained in the court's memorandum,
deferral of this standing issue is appropriate because the plaintiffs' capacity to
represent individuals from other states depends upon obtaining class certification.
(See id. at 66.)  Deferral is not warranted with respect to the IEU plaintiffs' standing
to bring a claim under the NDTPA, however, for the standing concerns would
remain irrespective of whether the named Nevada plaintiffs filed their claim alone
or as part of a class.  (See id. at 65 (quoting Clark v. McDonald's Corp., 213 F.R.D.
198, 204 (D.N.J. 2003) and describing circumstances in which it is inappropriate to
defer ruling on Article III standing issues)).  The NDTPA permits a private cause of
action to be filed by persons who are elderly or disabled.  See Nev. Rev. Stat.
§ 598.0977.  Neither Nevada plaintiff is elderly or disabled, nor do the IEU plaintiffs
contend that certain members of their proposed class may fit this description.
Thus, the standing issues do not arise from plaintiffs' attempts to represent the
proposed class, which renders deferral of the issue inappropriate.

### 4. **New Hampshire**

New Hampshire consumer protection law renders it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2. Defendants assert that the second amended complaint contains no allegations that price-fixing activity occurred within New Hampshire's borders, and therefore the claim must be dismissed. The IEU plaintiffs reject defendants' characterization of their pleading and contend that defendants fixed the price of chocolate products which were sold in the state of New Hampshire, forcing plaintiffs to pay supra-competitive prices for chocolate products purchased in the state. (See Doc. 701 at 20 (citing Doc. 665 ¶ 175).) According to the IEU plaintiffs, defendants' injection of price-fixed goods into the New Hampshire marketplace is sufficient to satisfy the statutory requirement that unfairly competitive acts occur "within th[e] state."

Commercial conduct is actionable under § 358-A:2 "only if it occurs within New Hampshire." Mueller Co. v. U.S. Pipe & Foundry Co., No. Civ. 03-170-JD, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003); see also In re Flash Memory, 643 F. Supp. 2d at 1159 (same). To ascertain whether this prerequisite has been satisfied, the court must focus upon the "offending conduct" itself rather than the locus of actual sales or the site of product manufacture. See Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 504 (D.N.H. 1996). The New Hampshire Supreme Court has emphasized that this statute is broad in sweep, explaining that a pleading

sufficiently states a claim if the "allegations encompass conduct which was part of trade or commerce that had direct or indirect effects on the people of [New Hampshire]." <u>LaChance v. U.S. Smokeless Tobacco Co.</u>, 931 A.2d 571, 578 (N.H. 2007).

Under this broad standard, the IEU plaintiffs have sufficiently stated a claim for relief under § 358-A:2. The second amended complaint avers that defendants colluded to fix the price of chocolate products that were then introduced into the New Hampshire market. (<u>See</u> Doc. 665 ¶ 175.) This purported behavior encompasses conduct that was part of trade or commerce that, at the very least, had indirect effects on the New Hampshire market and its residents. <u>See</u> <u>LaChance</u>, 931 A.2d at 578. The court concludes that the allegations of the second amended complaint state a plausible claim for relief under § 358-A:2, and defendants' motion to dismiss this cause of action will be denied.

## B. <u>Unjust Enrichment Claims</u>

In the consolidated first amended complaint, the IEU plaintiffs asserted a nationwide claim for unjust enrichment pursuant to the laws of fifty states, the District of Columbia, and Puerto Rico. The court dismissed each of these claims in its March 4, 2009 order, observing that "[r]estitution remedies vary considerably from state to state," (Doc. 582 at 81-82), with some jurisdictions precluding equitable recovery altogether. However, the IEU plaintiffs were permitted to file a second amended complaint that "clearly identif[ied] the state jurisdictions invoked therein." (<u>Id.</u> at 82.) The second amended complaint complies with this directive,

13

designating twenty-three jurisdictions in which restitution remedies are sought. (See Doc. 665 at ¶ 183.)  Defendants move to dismiss the unjust enrichment claims arising in thirteen of these jurisdictions.[8]  The court will address each of defendants' arguments in turn.

### 1.  **Arkansas**

The IEU plaintiffs bring a claim pursuant to the Arkansas Deceptive Trade Practices Act ("ADTPA") and a separate claim under an unjust enrichment theory. The ADTPA provides a statutory cause of action to any person that is injured by "unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade," Ark. Code Ann. § 4-88-107(10), whereas Arkansas common law permits a plaintiff to pursue a restitution claim when the defendant "has received money under such circumstances that, in equity and good conscience, he or she ought not to retain," Merchs. & Planters Bank & Trust Co. v. Massey, 790 S.W.2d 889, 891 (Ark. 1990).  According to defendants, equitable remedies such as unjust enrichment are foreclosed by the ADTPA, and the IEU plaintiffs are restricted by statute to the recovery of legal damages.  (See Doc. 671-3 at 29.)

Section 4-88-113(f) of the ADTPA states that an individual "who suffers actual damage or injury as a result of an offense or violation as defined in [the ADTPA] has a cause of action to recover actual damages."  Ark. Code Ann. § 4-88-

---

[8] Defendants also moved to dismiss the unjust enrichment claim arising under New Jersey law, which prompted the IEU plaintiffs to voluntarily withdraw this cause of action, (see Doc. 701 at 28 n.28, 30 n.31).

113(f).  A separate provision of the ADTPA permissively explains that "[t]he deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state."  § 4-88-107(b).  Thus, by its plain language, § 113(f) does not restrict the remedies available for unfair trade practices actionable at common law.  The IEU plaintiffs bring their unjust enrichment claim pursuant to the common law of Arkansas.  (See Doc. 665 ¶ 182.)  Accordingly, the action in equity is not barred by state statute and defendants' motion to dismiss the unjust enrichment claim will be denied.

2.    **Hawaii**

Defendants next argue that the IEU plaintiffs are prohibited by statute from seeking an equitable remedy under Hawaii law.  Hawaii Revised Statute § 480-13(a)(1) explicitly limits indirect purchasers injured by an illegal overcharge to recovery of compensatory damages.  See Haw. Rev. Stat. § 480-13(a)(1) (stating that "indirect purchasers injured by an illegal overcharge shall recover only compensatory damages").  However, Hawaii's consumer protection statute allows any consumer injured by unfair or deceptive trade practices to "sue for damages sustained by the consumer."  § 480-13(a)(b).  According to the IEU plaintiffs, equitable relief is sought specifically to remedy the unfair acts and practices prohibited by Hawaii's consumer protection statute rather than the type of misconduct described in Hawaii's antitrust statute.  Defendants do not meaningfully respond to this contention, and they identify no authority holding that

15

Hawaii's consumer protection statute limits the available relief to compensatory damages, as opposed to disgorgement of a defendant's profit. Absent any such authority, the court will not prohibit the IEU plaintiffs from seeking equitable relief under Hawaii law. See Miller v. French, 530 U.S. 327, 340-41 (2000) (explaining that a tribunal "should not construe a statute to displace courts' traditional equitable authority absent the 'clearest command'" (quoting Califano v. Yamasaki, 442 U.S. 682, 705 (1979))); Galgay v. Beaverbrook Coal Co., 105 F.3d 137, 143 (3d Cir. 1997) (stating that "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is recognized and applied" (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946))); see also NMV, 350 F. Supp. 2d at 211-12 (rejecting defendants' motion to dismiss state-law unjust enrichment claims when they had "presented no authority to show that where state law *does* allow an indirect purchaser to recover for violating state antitrust statutes, the recovery must be measured only by the damage to the plaintiff rather than by the illicit gain to the defendant" (emphasis in original)).

Defendants also argue that the unjust enrichment claim is precluded because the IEU plaintiffs possess an adequate remedy at law—namely, Hawaii's consumer protection statute. (See Doc. 671-3 at 34.) Under Hawaii law, "[t]he absence of an adequate remedy at law . . . is the 'necessary prerequisite' to maintaining equitable claims." AAA Haw., LLC v. Haw. Ins. Consultants, Ltd., CV. No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008) (quoting Porter v. Hu, 168

P.3d 994, 1007 (Haw. 2007)).  Defendants' argument is premature, however, for at

this stage of the litigation, the IEU plaintiffs are permitted to plead alternative

theories of recovery.[9]  See In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544

(D.N.J. 2004) (citing cases and denying similar motion to dismiss state-law unjust

enrichment claims because a party is "clearly permitted to plead alternative

theories of recovery").

### 3.    Maine

Defendants move to dismiss the unjust enrichment claim arising under

Maine law, contending that Maine's antitrust statute expressly limits an antitrust

claimant's available relief to compensatory damages.  (See Doc. 671-3 at 25.)  The

statute in question contains no such express limitation.  Rather, it states, *inter alia*,

that a successful antitrust plaintiff "shall recover 3 times the amount of the

damages sustained and cost of suit."  Me. Rev. Stat. Ann. tit. 10, § 1104.  The statute

is silent with respect to the equitable remedies available under state law.  In the

absence of any statutory language restricting the equitable remedies available

under Maine law, or any specific authority holding that an indirect purchaser may

not measure its recovery by the defendant's illicit benefit, the court finds that

dismissal of the equitable claim is unwarranted.  See supra Part III.B.2.

---

[9] In addition to the arguments described above, defendants assert that
Hawaii analyzes unjust enrichment "as applying to circumstances of quasi-contract,
as opposed to contract or tort."  (Doc. 671-3 at 28 n.11.)  Defendants cite no
authority, however, which forecloses equitable remedies for tortious harms such as
those alleged by the IEU plaintiffs.  Absent any such authority, the court will deny
defendants' motion on this ground.

### 4. **Massachusetts**

To prove a claim for unjust enrichment under Massachusetts law, a party must show: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law." <u>Massachusetts v. Mylan Labs.</u>, 357 F. Supp. 2d 314, 324 (D. Mass. 2005). According to defendants, the IEU plaintiffs' invocation of statutory remedies precludes equitable recovery. As the court explained above, <u>see</u> <u>supra</u> Part III.B.2, the IEU plaintiffs are entitled to plead in the alternative, <u>see</u> <u>In re K-Dur</u>, 338 F. Supp. 2d at 544. Therefore, they need not elect an exclusive avenue of recovery at this stage of the litigation, <u>see</u> <u>Mylan Labs.</u>, 357 F. Supp. 2d at 324 (denying motion to dismiss Massachusetts unjust enrichment claim and holding that plaintiff need not choose its remedy during litigation's pleading phase), and defendants' motion to dismiss will be rejected.[10]

### 5. **Minnesota**

Defendants assert that Minnesota's antitrust law permits injured parties to recoup legal damages and injunctive relief and, by implication, prohibits equitable remedies. In pertinent part, the Minnesota statute authorizes injured antitrust claimants to "recover three times the actual damages sustained," and injunctive

---

[10] Defendants also contend that claims for unjust enrichment under Massachusetts law sound exclusively in quasi-contract rather than tort. However, defendants cite no authority in support of this proposition, and it is one belied by available state law, <u>see, e.g.</u>, <u>Nat'l Merch. Corp. v. Leyden</u>, 348 N.E.2d 771, 775-76 (Mass. 1976) (holding that unjust enrichment claims arising under various "business tort" theories were "well merited").

relief. Minn. Stat. §§ 325D.57-58. These provisions are silent with respect to equitable remedies. Absent an explicit statutory prohibition or clear case law in support of defendants' preclusion argument, the court declines to restrict the equitable relief available under state law. See supra Part III.B.2-3.

Defendants also contend that a claim for unjust enrichment requires the IEU plaintiffs to prove that there is no adequate remedy at law. "To establish an unjust enrichment claim it must be shown that a party has knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." Southtown Plumbing, Inc. v. Har-Ned Lumber Co., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Equitable relief is available only to those claimants that lack an adequate remedy at law. Group Health Plan, Inc. v. Philip Morris, Inc., 68 F. Supp. 2d 1064, 1070 (D. Minn. 1999). Although the IEU plaintiffs will eventually be forced to choose a single path of recovery, they need not do so at the pleading stage. See supra Parts III.B.2, III.B.4. Consequently, defendants' motion to dismiss the equitable claim arising under Minnesota law will be denied.[11]

---

[11] In addition to the arguments above, defendants argue that a claim for unjust enrichment sounds exclusively in quasi-contract rather than tort. This contention is not supported by the case law proffered by defendants, however, see Wingert & Assocs., Inc. v. Paramount Apparel Int'l, Inc., No. Civ. 03-6451ADMAJB, 2005 WL 1355028, at *5 (D. Minn. June 7, 2005) (stating that "[u]njust enrichment claims are *typically* 'quasi-contract' claims" (emphasis added)), and the court will therefore reject it, see, e.g., Witt v. John Blomquist, Inc., 81 N.W.2d 265, 266-67 (Minn. 1957) (permitting plaintiff to seek damages in tort or contract to recoup defendant's unjust enrichment).

###### 6. __Nebraska__

Under both the antitrust and consumer protection statutes of Nebraska, an injured party is entitled "to recover the actual damages sustained . . . together with the costs of suit, including a reasonable attorney's fee." Neb. Rev. Stat. § 59-1609 (consumer protection statute); <u>see also</u> Neb. Rev. Stat. § 59-821 (permitting antitrust claimant to recoup "actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained"). Defendants argue that each of these statutes precludes—by virtue of omission—an equitable remedy. In Nebraska, however, "the 'equity jurisdiction of the district court is granted by the Constitution and cannot be legislatively limited or controlled." <u>Stoneman v. United Neb. Bank</u>, 577 N.W.2d 271, 279 (Neb. 1998) (quoting <u>K N Energy, Inc. v. City of Scottsbluff</u>, 447 N.W.2d 227, 234 (1989)). Thus, even if the above-cited statutes purported to abrogate state common law, the IEU plaintiffs would be constitutionally authorized to proceed in equity. <u>See</u> <u>id.</u> Hence, the court will deny the motion to dismiss on this ground.

Defendants next argue that the IEU plaintiffs are precluded from seeking unjust enrichment damages because they are not without an adequate remedy at law. To recover on an unjust enrichment claim under state law, a plaintiff "must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." <u>Kanne v. Visa U.S.A., Inc.</u>, 723 N.W.2d 293, 302 (Neb. 2006). Furthermore, "equitable remedies are generally not available where a statute

provides an adequate remedy at law." Pilot Inv. Group v. Hofarth, 550 N.W.2d 27,

33 (Neb. 1996). As the court has explained above, the IEU plaintiffs are permitted to

plead in the alternative, see Parts III.B.2, III.B.4-5; defendants' motion to dismiss is

thus appropriately denied.[12]

### 7. **Nevada**

Nevada's antitrust statute authorizes an injured claimant to seek injunctive

relief and treble damages. See Nev. Rev. Stat. § 598A.210. Defendants argue that

by omitting equitable relief from this statutory provision, the Nevada legislature

intended to foreclose unjust enrichment as a potential remedy for antitrust harms.

However, the statute itself is silent with respect to the equitable remedies available

under state law and defendant identify no authority in support of their contention.

For reasons the court has set forth above, see supra Parts III.B.2-3, III.B.5, the

court rejects defendants' argument.

Defendants also contend that the unjust enrichment claim is faulty because

the second amended complaint does not allege that the IEU plaintiffs lack an

adequate remedy at law. In Nevada, equitable remedies are typically unavailable to

claimants that possess "a full and adequate remedy at law." In re Wal-Mart Wage

& Hour Employment Practices Litig., 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007). For

---

[12] According to defendants, claims for unjust enrichment under Nebraska law are analyzed exclusively under principles of quasi-contract, as opposed to tort. Again, defendants' contention is belied by relevant authority, see, e.g., Henkle & Joyce Hardware Co. v. Maco, Inc., 239 N.W.2d 772, 777 (Neb. 1976) (discussing availability of unjust enrichment remedies to various "business torts"), and is therefore rejected.

the reasons detailed above, the IEU plaintiffs may plead in the alternative even if they will eventually be forced to forego either an equitable or legal remedy.  See Parts III.B.2, III.B.4-6.  Consequently, defendants' motion to dismiss the Nevada unjust enrichment claim will be denied.[13]

### 8.   **New Hampshire**

The state of New Hampshire has not adopted an Illinois Brick repealer and does not permit indirect purchasers to bring an antitrust action.  See Minuteman v. Microsoft Corp., 795 A.2d 833, 838-40 (N.H. 2002).  Furthermore, as the court explained in its memorandum and order of March 4, 2009, the availability of equitable relief may depend upon whether a particular state has adopted an Illinois Brick repealer.  (See Doc. 582 at 82.)  In short, it would improperly displace the legislative prerogative to allow indirect purchasers such as the IEU plaintiffs to vindicate antitrust injury via equitable relief in jurisdictions where the legislative body has not adopted an Illinois Brick repealer.  See NMV, 350 F. Supp. 2d at 211-12 (rejecting indirect purchasers' restitution claims in those jurisdictions which had not adopted an Illinois Brick repealer).

The IEU plaintiffs' unjust enrichment claim seeks to rectify harms incurred under the New Hampshire consumer protection statute rather than the state's antitrust statute.  (See Doc. 701 at 30-31.)  The consumer protection statute not only

---

[13] Defendants argue that an unjust enrichment claim under Nevada sounds exclusively in quasi-contract, but fail to provide case law which supports such a contention.  This argument will therefore be rejected.

authorizes indirect purchaser suits, but the New Hampshire Supreme Court has held that the "indisputable" intent underlying passage of the act was to "make actionable . . . at least some types of conduct that typically are associated with the antitrust realm." LaChance, 931 A.2d at 576-77. Thus, New Hampshire law clearly recognizes a degree of overlap between indirect purchasers' antitrust claims—which are prohibited—and indirect purchasers' consumer protection claims—which are permitted. The court has held that the IEU plaintiffs' second amended complaint states a cognizable claim under the New Hampshire consumer protection law, see supra Part II.A.4, and, by pursuing equitable relief for the alleged consumer protection harms, the IEU plaintiffs are simply pleading alternative remedies. As such, defendants' motion to dismiss the New Hampshire unjust enrichment claim will be denied.

Defendants also attack the unjust enrichment claim as deficiently pleaded. Specifically, defendants argue that the IEU plaintiffs possess an adequate remedy at law for the purported consumer protection harms and are foreclosed from seeking equitable relief. In New Hampshire, "[u]njust enrichment is an equitable remedy that ordinarily is unavailable if legal remedies are adequate under the circumstances." Parsons Infrastructure & Tech. Group., Inc. v. Gilbane Bldg. Co., No. 05-CV-01-PB, 2005 WL 2978901, at *1 (D.N.H. Nov. 7, 2005). Although this may later prevent the IEU plaintiffs from pursuing both equitable and legal recourse for the alleged consumer protection injuries, it imposes no such restriction at the

pleading stage.  See Parts III.B.2, III.B.4-7.  Defendants' motion to dismiss this

claim will accordingly be denied.

### 9.    New Mexico

Defendants next move to dismiss the unjust enrichment claim arising under

New Mexico law, arguing that the IEU plaintiffs have invoked an adequate remedy

at law and are therefore foreclosed from pursuing equitable relief.  According to the

New Mexico Supreme Court, "if the allegations of a complaint disclose, in addition

to a claim for statutory relief, the existence of a claim for equitable relief, the court

can administer full relief." Sims v. Sims, 930 P.2d 153, 159 (N.M. 1996).  A full and

adequate remedy at law, however, typically precludes a claimant from pursuing

equitable relief.  See Gen. Tel. Co. v. State Tax Comm'n, 367 P.2d 711, 715 (N.M.

1962).  For the reasons set forth above, the court holds that the IEU plaintiffs may

plead alternative avenues of relief, see Parts III.B.2, III.B.4-8, and therefore

defendants' motion to dismiss this claim will be denied.

### 10.    New York

Under New York law, a claim for unjust enrichment requires a plaintiff to

show that (1) the defendant was enriched, (2) the enrichment was at the plaintiff's

expense, and (3) the circumstances were such that equity and good conscience

require the defendant to make restitution.  Violette v. Armonk Assocs., L.P., 872 F.

Supp. 1279, 1282 (S.D.N.Y. 1995).  New York courts have held that it is immaterial

whether the purported benefit was directly or indirectly conferred upon the

defendant.  See, e.g., Cox v. Microsoft Corp., 8 A.D.3d 39, 40-41 (App. Div. 2004)

24

(permitting indirect purchasers of software products to pursue unjust enrichment claims to recoup overcharges); <u>Mfrs. Hanover Trust Co. v. Chem. Bank</u>, 160 A.D.2d 113, 117-18 (App. Div. 1990) ("It does not matter whether the benefit is directly or indirectly conveyed."); <u>see also</u> <u>Sperry v. Crompton Corp.</u>, 863 N.E.2d 1012, 1017 (N.Y. 2007) (explaining that a plaintiff and defendant need not be in privity for the plaintiff to state a claim for unjust enrichment). In fact, according to the Court of Appeals, "the essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant what is sought to be recovered." <u>Sperry</u>, 863 N.E.2d at 1017 (quoting <u>Paramount Film Distrib. Corp. v. New York</u>, 285 N.E.2d 695, 698 (1972)).

Defendants argue that the IEU plaintiffs' equitable claim warrants dismissal because the second amended complaint does not allege "direct dealings" or "an actual, substantive relationship" between defendants and the IEU plaintiffs. (<u>See</u> Doc. 671-3 at 33.) Such allegations are simply not required by New York law. The IEU plaintiffs have averred that a monetary benefit was indirectly conferred on defendants by virtue of their collusive market behavior. These allegations—construed in the light most favorable to the complainants—characterize defendants as indirect recipients of a benefit which they otherwise would have been without; this is sufficient to state a claim for equitable relief under New York law. <u>See</u> <u>Mfrs. Hanover Trust</u>, 160 A.D.2d at 117-18 (explaining that a defendant "may be unjustly enriched not only where he

25

receives money or property, but also where he otherwise receives a benefit" (quoting <u>Blue Cross of Cent. N.Y. v. Wheeler</u>, 93 A.D.2d 995, 996 (App. Div. 1983))).

The court will also reject the remainder of the grounds upon which defendants seek dismissal of the New York claim. First, the New York consumer protection statute does not, by its terms, preclude the IEU plaintiffs from seeking equitable relief. <u>See</u> N.Y. Gen. Bus. Law § 349(h) (permitting an injured party to file suit "to enjoin such unlawful act or practice" or to "recover his actual damages or fifty dollars, whichever is greater"); <u>see also</u> <u>supra</u> Parts III.B.2-3, III.B.5, III.B.7 (rejecting defendants' contention that equitable relief was precluded because not explicitly mentioned by statute). Second, defendants argue that the unjust enrichment claim cannot proceed because the IEU plaintiffs have pleaded an adequate remedy at law. Again, the court has made clear that the IEU plaintiffs are within their rights to plead in the alternative. <u>See</u> <u>supra</u> Parts III.B.2, III.B.4-9. Thus, defendants' motion to dismiss the New York unjust enrichment claim is appropriately denied.[14]

---

[14] Defendants also argue that New York courts analyze unjust enrichment claims exclusively under principles of quasi-contract. This is incorrect and unsupported by the authority provided by defendants. <u>See, e.g.</u>, <u>Mfrs. Hanover Trust</u>, 160 A.D.2d at 117-18 (explaining that "courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent" (quoting <u>Paramount Film Distrib.</u>, 285 N.E.2d at 698)).

## 11. **North Carolina**

Defendants next move to dismiss the unjust enrichment claim sounding in North Carolina law, arguing that equitable remedies are foreclosed under the state's antitrust statute and its consumer protection statute. The court rejects both contentions. Neither statute explicitly restricts an injured claimant's recourse to equity, and the court will not infer such a prohibition in the absence of some authority in support thereof. <u>See</u> <u>supra</u> Parts III.B.3, III.B.5, III.B.7, III.B.10. The court also rejects defendants' assertion that an adequate remedy at law prevents the IEU plaintiffs from pleading an equitable claim. For the reasons set forth above, the IEU plaintiffs are permitted to plead alternative theories of relief even if they must eventually select either a legal or equitable remedy. <u>See</u> <u>supra</u> Parts III.B.2, III.B.4-10. Accordingly, defendants' motion to dismiss the North Carolina unjust enrichment claim is denied.[15]

---

[15] In addition, defendants seek dismissal of the unjust enrichment claim because North Carolina purportedly analyzes such a cause of action exclusively under quasi-contract principles. According to the North Carolina Supreme Court, an unjust enrichment action "is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." <u>Booe v. Shadrick</u>, 369 S.E.2d 554, 556 (N.C. 1998). This characterization does not merit dismissal of the IEU plaintiffs' equitable claim; it is simply an alternate means of conceptualizing the equitable claim. As the <u>Booe</u> court went on to explain, an unjust enrichment action "is not based on a promise but is imposed by law to prevent unjust enrichment. . . . [T]he measure of damages for unjust enrichment is the reasonable value of the goods and services to the defendant." <u>Id.</u> In short, North Carolina's characterization of an unjust enrichment action is not materially different from the manner in which other states characterize the equitable claim, and defendants have provided no authority indicating that a claim for unjust enrichment under North Carolina law must fail when it is based upon antitrust overcharges.

12.    **Tennessee**

A plaintiff pursuing an unjust enrichment claim in Tennessee must prove that (1) a benefit was conferred upon the defendant by the plaintiff, (2) the defendant appreciated the benefit, and (3) the defendant accepted the benefit under such circumstances that it would be inequitable to retain the benefit without payment of value.  Freeman Indus. LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005).  In addition to the above elements, "[t]he plaintiff must . . . demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract."  Id.

Defendants argue that the second amended complaint contains no allegation concerning Tennessee's exhaustion requirement.  In the instant matter, the IEU plaintiffs purportedly purchased chocolate products from members of the putative class of direct purchasers, and the complaint is devoid of averments concerning remedies pursued by the IEU plaintiffs against the direct purchasers.  However, the IEU plaintiffs do not allege that members of the direct purchaser class participated in the purported price-fixing conspiracy and therefore it is unclear what, if any, remedies they could pursue.  In such cases, Tennessee law recognizes a futility exception to the exhaustion requirement.  Specifically, "a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile."  Id. at 526.  The court finds this exception applicable herein, for the IEU plaintiffs simply lack a cognizable remedy against the direct purchasers.  See In re TFT-LCD Antitrust Litig., 599 F. Supp. 2d 1179, 1193

28

(N.D. Cal. 2009) (applying futility exception when indirect purchasers alleged price-fixing by defendant-manufacturers and there were no allegations that direct purchasers were involved in the purported conspiracy). Defendants' motion to dismiss the claim under Tennessee law is thus denied.

### 13. West Virginia

West Virginia's antitrust statute permits an injured claimant to "recover threefold the damages sustained by him, together with reasonable attorneys' fees, filing fees and reasonable costs of the action." W. Va. Code § 47-18-9. Defendants contend that the statute precludes the IEU plaintiffs' attempt to obtain equitable relief. As the court has explained above, see Parts III.B.3, III.B.5, III.B.7, III.B.10-11, such an argument is unpersuasive in the absence of supportive authority. Defendants' motion to dismiss the West Virginia claim will therefore be denied.[16]

## IV. Conclusion

For the foregoing reasons, the IEU plaintiffs' consumer protection claims arising under Hawaii and Nevada law will be dismissed, and leave to narrowly amend will be granted. The claim levied pursuant to chapter 93A of the Massachusetts General Laws may proceed in its current form, though the IEU plaintiffs may elect to amend in order to circumvent a subsequent dispute over the

---

[16] Defendants also argue that West Virginia exclusively analyzes unjust enrichment claims under principles of quasi-contract rather than tort. Defendants cite to no authority, however, indicating that an equitable claim under West Virginia does not encompass the purported overcharges recouped by defendants at the IEU plaintiffs' expense. Thus, the court will reject defendants' invitation to dismiss the West Virginia claim on this ground.

Massachusetts notification requirement.  The remaining arguments in defendants'

motion to dismiss will be denied, and the IEU plaintiffs' New Hampshire consumer

protection claim, as well as each of the unjust enrichment claims, will be permitted

to proceed.

An appropriate order follows.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:      September 21, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: CHOCOLATE  : **MDL DOCKET NO. 1935**
CONFECTIONARY ANTITRUST : **(Civil Action No. 1:08-MDL-1935)**
LITIGATION     :
_____: **(Judge Conner)**
         :
**THIS DOCUMENT APPLIES TO:** :
         :
  **INDIRECT END USERS** :

## ORDER

AND NOW, this 21st day of September, 2010, upon consideration of the

motion (Doc. 671) certain claims appearing in the Indirect End User plaintiffs'

second amended complaint, and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

 1. The motion (Doc. 671) is GRANTED in part and DENIED in part as
   follows:

   a. The motion is GRANTED with respect to the claims raised
     under the following law:

     i. Haw. Rev. Stat. § 480-2.

     ii. Nev. Rev. Stat. §§ 598.0903-598.0999.

   b. The motion is DENIED in all other respects.

2.     On or before October 14, 2010, the Indirect End User plaintiffs may file a third amended complaint for the purposes of:

    a.     Stating a claim under Haw. Rev. Stat. § 480-2 which alleges that defendants engaged in unfair and deceptive acts and practices.

    b.     Stating a claim under Nev. Rev. Stat. §§ 598.0903-598.0999 which satisfies the statutory standing requirement.

    c.     Complying with the notification requirement of Mass. Gen. Laws ch. 93A, § 9.

____S/ Christopher C. Conner____
CHRISTOPHER C. CONNER
United States District Judge